FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 04, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SAVANNA I.,[1]

        Plaintiff,

v.

ANDREW M. SAUL, the Commissioner of Social Security,[2]

        Defendant.

No. 4:19-CV-5037-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[3] Plaintiff Savanna I. appeals the denial of benefits by the Administrative Law

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

[3] ECF Nos. 11 & 12.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) discounting Plaintiff's symptom reports; 3) improperly determining that the impairments did not meet or equal a listed impairment; 4) failing to properly consider lay statements; and 5) erring at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 11, and grants the Commissioner's Motion for Summary Judgment, ECF No. 12.

## I.  Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[4] 20 C.F.R. § 404.1520(a).

[5] *Id.* § 404.1520(a)(4)(i).

[6] *Id.* § 404.1520(b).

[7] *Id.*

or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied.[9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[8] 20 C.F.R. § 404.1520(a)(4)(ii).

[9] *Id.* § 404.1520(c).

[10] *Id.*

[11] *Id.* § 404.1520(a)(4)(iii).

[12] *Id.* § 404.1520(d).

[13] *Id.* § 404.1520(a)(4)(iv).

[14] *Id.*

economy—in light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

## II. Factual and Procedural Summary

On June 17, 2015, Plaintiff filed a Title II application, alleging a disability onset date of May 1, 2013.[19] Her claim was denied initially and upon reconsideration.[20] A video administrative hearing was held before Administrative Law Judge R. J. Payne.[21]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Plaintiff met the insured status requirements through June 30, 2015;

---

[15] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[16] 20 C.F.R. § 404.1520(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] AR 197-98.

[20] AR 122-28 & 131-38.

[21] AR 34-93.

- Step one: Plaintiff had not engaged in substantial gainful activity from May 1, 2013, through June 30, 2015;

- Step two: Plaintiff had the following medically determinable severe impairments: migraine headaches, depressive disorder, and generalized anxiety disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform:

  > a full range of work at all exertional levels but with the following nonexertional limitations: she should never climb ladders and scaffolds, or be exposed to unprotected heights and hazardous moving machinery, and she should avoid concentrated exposure to loud noise. She could understand, remember, and carry out simple, routine, and/or repetitive work tasks and instructions;

- Step four: Plaintiff had no past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work experience, there was little or no effect on the occupational base of unskilled work that Plaintiff was capable of performing in the national economy.[22]

When assessing the medical-opinion evidence, the ALJ gave:

---

[22] AR 14-30.

- great weight to the reviewing opinions of Lynne Jahnke, M.D., Nancy Winfrey, Ph.D., Greg Saue, M.D., and Diane Fligstein, Ph.D.;
- significant weight to the examining opinion of Patrick Reilly, Ph.D.; and
- some weight to the opinion of Joshua Boyd, Psy.D.[23]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[24] Likewise, the ALJ discounted Plaintiff's husband's lay statements.[25]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[26] Plaintiff timely appealed to this Court.

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[27] The Commissioner's decision is set aside "only if it is not supported by substantial

---

[23] AR 23-25.

[24] AR 22.

[25] AR 25.

[26] AR 1-6 & 195-96.

[27] 42 U.S.C. § 405(g).

evidence or is based on legal error."[28] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[29] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[30] The Court considers the entire record as a whole.[31]

Further, the Court may not reverse an ALJ decision due to a harmless error.[32] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

---

[28] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[29] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[30] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[31] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[32] *Molina*, 674 F.3d at 1111.

nondisability determination."[33] The party appealing the ALJ's decision generally bears the burden of establishing harm.[34]

### IV. Analysis

### A. Medical Opinions: Plaintiff fails to establish error.

Plaintiff challenges the ALJ's assignment of less weight to Patrick Reilly, Ph.D.'s examining opinion than to the subsequent reviewing opinion of the testifying psychologist, Dr. Winfrey.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant.[35] Generally, more weight is given to the opinion of an examining psychologist than to the opinion of a non-examining psychologist.[36] The opinion of a nonexamining psychologist serves as substantial evidence if it is supported by other independent evidence in the record.[37]

---

[33] *Id.* at 1115 (quotation and citation omitted).

[34] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[35] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[36] *See id.*

[37] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Here, Dr. Reilly performed a psychological evaluation of Plaintiff in August 2015.[38] Dr. Reilly diagnosed Plaintiff with unspecified depressive disorder and unspecified anxiety disorder. He opined that Plaintiff's comprehension, memory, attention, and concentration appeared to evidence moderate to notable deficits and that her adaptive characteristics and abilities appeared to evidence moderate deficits.

The ALJ gave significant weight to Dr. Reilly's opinion because he was familiar with the Social Security Administration's (SSA) disability program, the opinion was based on a then-recent examination, and the opinion was consistent with the overall medical evidence.[39] But the ALJ gave even more weight to Dr. Winfrey's opinion offered at the administrative hearing because Dr. Winfrey was able to review the entire record and extrapolate back to the period before Plaintiff's date of last insured (June 30, 2015).[40]

That Dr. Winfrey was able to review the entire record, including Dr. Reilly's opinion and other medical records that Dr. Reilly did not review, was a legitimate and specific reason to give more weight to Dr. Winfrey's nonexamining opinion and resulted in Dr. Winfrey's nonexamining opinion serving as substantial evidence

---

[38] AR 292-97.

[39] AR 24.

[40] AR 24.

given that it was supported by other independent evidence.[41] The only medical records reviewed by Dr. Reilly were Plaintiff's progress notes and documentation of physical examination from Kadlec Medical Center dated November 10 and 17, 2014.[42] Dr. Reilly also reviewed Plaintiff's SSA Application, which included a review of her symptoms presented, medical conditions, work history, medical treatment, medicines, education and training history, support services, and daily activities.[43] In comparison, Dr. Winfrey had access to the more than two-hundred pages of other medical records spanning from February 2014 to August 2017.[44] That Dr. Winfrey was more familiar with Plaintiff's longitudinal case record was a legitimate and specific reason to give more weight to Dr. Winfrey's opinion than to Dr. Reilly's opinion.

---

[41] *See Andrews*, 53 F.3d at 1041.

[42] AR 292 (referring to AR 325-29).

[43] AR 292 (referring to AR 213-22 (SSA Form 3368: Adult Disability Report)).

[44] *See* 20 C.F.R. § 404.1527(c)(6) (specifying that the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight to give that opinion); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion).

Moreover, after giving Dr. Reilly's opinion significant weight, the ALJ rationally translated Dr. Reilly's medical opinion into the RFC by limiting Plaintiff to simple, routine, and repetitive tasks and instructions.[45]

Plaintiff fails to establish that the ALJ erred.

### B. Plaintiff's Symptom Reports: Plaintiff fails to establish error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[46] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[47]

Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence, including the medical signs and findings, medication overuse and apparent attempt to seek narcotics, anticipated improvement with treatment, lack

---

[45] *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999).

[46] *Molina*, 674 F.3d at 1112.

[47] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

of mental health treatment, and Plaintiff's inconsistent statements about her abilities to engage in activities of daily living.[48] As the ALJ discussed, the objective medical evidence is inconsistent with Plaintiff's reported disabling symptoms. Although imaging did not indicate a cause for the headaches, other than the cyst in Plaintiff's right sinus, which was surgically removed in August 2015, the largely benign medical observations support the ALJ's finding that the objective medical evidence was inconsistent with Plaintiff's reports of debilitating headaches and migraines.[49] The ALJ also rationally found that Plaintiff's mental status examinations were generally noted as normal, which was inconsistent with Plaintiff's alleged concentration and other mental problems.[50] In addition, the record supports the ALJ's finding that Plaintiff failed to take medication as prescribed and at times sought to obtain opioids to treat her reported pain even though opioids were not a recommended treatment for headaches or migraines.[51] Moreover, the ALJ rationally found Plaintiff's reported challenges with her daily

---

[48] AR 22-23.

[49] *See* AR 314-18, 349-52, 370-72, & 377. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[50] AR 23, 302, & 317.

[51] *See, e.g.*, AR 301-02, 337, 426, 440, 453, 463, 483, & 528. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (recognizing that evidence of drug-seeking behavior undermines a claimant's reported symptoms).

living activities inconsistent with her report to Dr. Reilly during the consultative examination that she had no problem with her daily living activities.[52] These were clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's reported disabling symptoms.

Plaintiff fails to establish the ALJ erred by discounting Plaintiff's symptom reports.

## C. Step Three (Listings): Plaintiff fails to establish error.

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet Listing 11.02 due to her debilitating headaches. Plaintiff argues the ALJ's reasoning was inadequate boilerplate and based on incomplete testimony from Dr. Jahnke, who Plaintiff contends did not review the entire medical record.

In this regard, the ALJ stated:

> [Plaintiff's] migraine headaches were not shown to be severe enough to meet or equal the criteria of a neurological system impairment under section 11.00. The undersigned considered the overall effects of [Plaintiff's] headaches on functioning, particularly whether there was a marked limitation in any of the areas of functioning: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adopting or managing oneself, and found her headaches were not of a severity to meet or equal a listing. In addition, the

---

[52] AR 23 & 295. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

> medical expert, Lynne Jahnke, M.D., reviewed the medical record and testified that [Plaintiff's] impairment did not meet or equal a listing.[53]

The Court finds the ALJ's articulated reasoning and analysis sufficiently specific (in light of the entire ALJ decision) and supported by substantial evidence. A full review of Dr. Jahnke's testimony indicates that she reviewed the full medical record and that after reviewing the record she determined that there was little medical evidence to support a finding that Plaintiff's migraines were a severe condition as of the date of last insured.[54] The ALJ then reasonably elected to assume for purposes of discussion that Plaintiff's migraines were severe and then inquired with Dr. Jahnke as to what functional limitations would be reasonable to help reduce the reported migraines and headaches.[55] Dr. Jahnke's testimony during this discussion supports the ALJ's finding that Plaintiff's migraines were not severe enough to meet or equal a listing.

Plaintiff fails to establish that the ALJ erred at step three.

## D. Lay Witness: Plaintiff fails to establish error.

The ALJ discounted Plaintiff's husband John's statements.[56] The ALJ discounted John's statements because, although John described some of Plaintiff's

---

[53] AR 20.

[54] AR 38-56.

[55] AR 50-52.

[56] AR 25 & 237-42.

symptoms, he did not explain why she was limited, and the reported symptoms were inconsistent with the record.[57] The ALJ's decision to discount John's statements is rational and supported by substantial evidence. That John failed to explain how the limitations related to Plaintiff's conditions was a germane reason to discount his statements on this record.[58] In addition, on this record, it was a germane reason to discount his statements for the same reasons that the ALJ discounted Plaintiff's reported similar symptoms.[59]

Plaintiff fails to establish err by the ALJ in this regard.

**E.     Step Five: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ erred by failing to call a vocational expert at the administrative hearing. This argument is unpersuasive. The RFC allowed Plaintiff to perform work at all exertional levels that accommodated Plaintiff's restriction to understand, remember, and carry out simple, routine, and/or repetitive work tasks and instructions that did not involve climbing ladders or scaffolds, exposure to unprotected heights or hazardous moving machinery, and concentrated exposure to loud noise.[60] This RFC is supported by substantial

---

[57] *Id.*

[58] *See Molina*, 674 F.3d at 1111-12.

[59] AR 23. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

[60] AR 21.

evidence. Even when these restrictions are viewed cumulatively, the ALJ rationally found that this RFC had little effect on the occupational base of unskilled work at all exertional levels.[61] Plaintiff fails to establish the ALJ erred by relying on the Medical-Vocational Guidelines and grids without the assistance of a vocational expert.[62]

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.
2. The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.
3. The Clerk's Office shall enter **JUDGMENT** in favor of the Commissioner.
4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 4th day of March 2020.

s/Edward F. Shea<br>
EDWARD F. SHEA<br>
Senior United States District Judge

---

[61] AR 26. *See* SSR 85-15, available at 1985 WL 56857.

[62] *See Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16